IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES E. CUTTIC, | : | CIVIL ACTION |
| | : | NO. 09-1461 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CROZER-CHESTER MEDICAL | : | |
| CENTER, | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              August 12, 2011


**I. INTRODUCTION**

Plaintiff Charles E. Cuttic ("Plaintiff") commenced this action as a putative collective action[1] against Defendants, Crozer-Chester Medical Center ("CCMC" or "Defendant"), Crozer-Keystone Health System, Delaware Memorial Hospital, Taylor Hospital, Springfield Hospital, Community Hospital, and Crozer-Keystone Health Network.  Pursuant to this Court's December 27, 2010 Order, all claims have been dismissed as to Crozer-Keystone Health System, Delaware Memorial Hospital, Taylor Hospital, Springfield Hospital, Community Hospital, and Crozer-Keystone Health Network.  Consequently, the only Defendant remaining in

---

[1]     Notices of the putative collective action were sent to all putative collective action members, but no additional members opted into the lawsuit.  As such, only Plaintiff's particular circumstances are before the Court.

this case is CCMC.

Plaintiff's complaint alleged that Defendant violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 207(a), by not compensating him at a rate of one-and-a-half times his regular hourly pay for all hours worked in excess of forty hours.  Defendant, however, contended that Plaintiff is not entitled to overtime payment because he falls into the FLSA's bona fide professional exemption because Plaintiff serves as a Physician's Assistant ("PA").[2]  Following the parties' motions for summary judgment, the Court ruled that Plaintiff is not an exempt bona fide professional as defined by the Department of Labor's ("DOL") regulations interpreting this phrase.[3]  As such,

---

[2]   Individuals employed "in a bona fide executive, administrative, or professional capacity" are exempt from the FLSA's overtime requirements and need not receive overtime wages. 29 U.S.C. § 213(a)(1).

[3]   The first definition of "bona fide . . . professional" is found in 29 C.F.R. § 541.300.  This definition requires that the employee meet certain salary and job duties requirements in order to be deemed exempt from the FLSA's overtime requirements. The second definition of "bona fide . . . professional" is found in § 541.304.  This exemption provides:

        (a) The term employee employed in a bona fide professional capacity in section 13(a)(1) of the Act also shall mean: (1) Any employee who is the holder of a valid license or certificate permitting the practice of law or medicine or any of their branches and is actually engaged in the practice thereof; . . . . . .

        (b) In the case of medicine, the exemption applies to physicians and other practitioners

the Court concluded that Plaintiff is entitled to overtime pay.

Defendant asks the Court to reconsider the Court's Order granting Plaintiff's motion for summary judgment. Alternatively, Defendant requests that this Court certify the Order granting Plaintiff's motion for summary judgment for interlocutory appeal.  For the reasons set forth below, the Court will deny both of Defendant's requests.

## II.  MOTION FOR RECONSIDERATION

Defendant moves for reconsideration, arguing that the Court should vacate its prior Order to correct a clear error of law and avoid a manifest injustice.  Defendant makes four arguments in support of this motion: (1) the Court erred by

---

licensed and practicing in the field of medical science and healing or any of the medical specialties practiced by physicians or practitioners. The term physicians includes medical doctors including general practitioners and specialists, osteopathic physicians (doctors of osteopathy), podiatrists, dentists (doctors of dental medicine), and optometrists (doctors of optometry or bachelors of science in optometry).

. . .

(d) The requirements of 541.300 and subpart G (salary requirements) of this part do not apply to the employees described in this section.

29 C.F.R. § 541.304.

focusing its analysis on PAs generally rather than focusing specifically on the nature of Plaintiff's employment; (2) the Court erred by relying on the 1973 version of the regulations interpreting the bona fide professional exemption rather than the amended regulations; (3) the Court's reliance on Belt v. Emcare, Inc., 444 F.3d 403 (5th Cir. 2006) is inappropriate because Plaintiff unambiguously meets the requirements of 29 C.F.R. § 541.304; and (4) the Court failed to give all parts of the relevant regulation meaning.  The Court will address each of Defendant's arguments in turn.


A.    Legal Standard

        The purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence."  Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).  A motion for reconsideration should be granted if the moving party establishes: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice."  Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010).


B.    The Court Engaged in an Adequate Factual Inquiry

Defendant first contends that the Court overlooked the "cardinal rule" for determining the status of an employee by focusing on PAs generally and ignoring a case-specific analysis. Defendant argues that the undisputed facts establish that Plaintiff falls within § 541.304 because Plaintiff is a "practitioner[] licensed and practicing in the field of medical science." (Mot. For Recons. 3.)  Defendant's argument overlooks the Court's examination of facts relevant to this case and the Court's analysis of § 541.304.

The DOL's regulations state that "[a] job title is insufficient to establish the exempt status of an employee.  The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary or duties meet the requirements of the regulations."  29 C.F.R. § 541.2.  The Third Circuit emphasized the importance of this principle in Smith v. Johnson & Johnson, 593 F.3d 280 (3d Cir. 2010).[4]  See 593 F.3d at 283 n.1 (focusing on "the specific facts

---

[4]     In Smith, the court examined the job duties of a pharmaceutical representative and ruled that the plaintiff was exempt from the requirements of the FLSA because the plaintiff was employed in a "bona fide . . . administrative capacity." Smith, 593 F.3d at 283-85.  The Smith court looked to the definition of "bona fide . . . administrative capacity" as elaborated by the regulations.  Id. at 284.  In Smith, the court examined plaintiff's testimony and found that plaintiff met the salary requirement and duties requirements of the DOL's definition of an employee engaged in a "bona fide . . . administrative capacity."  Id. at 285.  In finding that plaintiff was exempt from the FLSA, the court relied on a regulation similar to § 541.300.  The regulation at issue in Smith provided

developed in discovery").  Defendant argues that the Court should have simply looked at all the facts and concluded that Plaintiff falls within the definition of a "bona fide . . . professional," as described in § 541.304, because he is licensed to practice medicine, in Pennsylvania, under the supervision of a physician. (Mot. for Recon. at 4.)

In this case, the Court engaged in an adequate factual examination of Plaintiff's position.  The Court examined Plaintiff's job duties, education, and professional licensing. See Cuttic, 760 F. Supp. 2d at 515 (examining the specific nature of Plaintiff's employment).  It was unnecessary to elaborate on Plaintiff's job duties because the dispute between the parties did not center on Plaintiff's job duties.  See Smith, 593 F.3d at 284 (discussing plaintiff's job duties as explicitly required by the test set forth in 29 C.F.R. § 541.200).  Rather, the parties disputed the meaning of § 541.304.  Specifically, the parties disputed whether Plaintiff qualifies as an individual who holds a license that allows him to "practice medicine" as described in § 541.304 given that his license is subject to the caveat that he is only allowed to practice medicine under the supervision of a

_____

that an individual shall be deemed to be employed in a "bona fide . . . administrative capacity" if he or she receives a certain salary and engages in particular primary duties.  Id. at 284 (citing 29 C.F.R. § 541.200).  The regulation at issue in this case, however, differs from that in Smith and § 541.300 because it does not explicitly require the examination of job duties.

physician.  See Cuttic, 760 F. Supp. 2d at 515 (citing
Plaintiff's deposition).[5]    Unlike Smith, the dispute did not
center solely on Plaintiff's salary and duties.  Under these
circumstances, the Court found that Plaintiff's possession of a
license to practice medicine under physician supervision was not
dispositive of his exempt or non-exempt status.  Based on the
aforementioned, the Court adequately considered all facts
relevant to the dispute at hand.


      C.    <u>The Court Properly Interpreted the 2004 Regulations And
          Correctly Relied Upon Applicable Law</u>

      Defendant next argues that the Court overlooked the
2004 amendments to the DOL regulations and asserts that the
Court's reliance on Belt is misplaced.  Defendant also reasons
that the Court's interpretation of the 2004 regulations is
"legally unsupportable," because it renders language within §
541.304 superfluous.


          1.    <u>The Court Did Not Overlook the 2004
                 Amendments</u>

      Defendant claims that the Court erroneously relied on

---

     [5]    In Pennsylvania, a PA "practices medicine with
physician supervision," 49 Pa. Code § 18.151(a), and "shall be
considered the agent of the supervising physician in the
performance of all practice-related activities."  Id. §
18.151(e).

29 C.F.R. § 541.314,[6] the 1973 regulation that preceded §

541.304.  Although the Court briefly discussed the 1973 version

of the regulation, it only did so to interpret the language found

in § 541.304 and to place that language in context.  In

particular, the Court examined § 541.314 to highlight the DOL's

continued refusal to exempt hourly-compensated PAs from the

FLSA's overtime requirements.  Cuttic, 760 F. Supp. 2d at 518-19;

see also Belt, 444 F.3d at 414 (citing 2004 amendments to DOL

---

[6]    Section 541.314 of the 1973 regulations provides, in
relevant part:

> Exception for physicians, lawyers, and teachers.
>
> (a) . . . The exception applies only to the
> traditional professions of law, medicine, and
> teaching and not to employees in related
> professions which merely serve these
> professions.
>
> (b) In the case of medicine:
>
> (1) . . . The term physicians means medical
> doctors including general practitioners and
> specialists, and osteopathic physicians. . .
> .  Other practitioners in the field of
> medical science and healing may include
> podiatrists . . ., dentists . . .,
> optometrists . . . .
>
> (2) [omitted]
>
> (3) In the case of medical occupations, the
> exception from the salary or fee requirement
> does not apply to pharmacists, nurses,
> therapists, technologists, sanitarians,
> dieticians, social workers, psychologists,
> psychometrists, or other professions which
> service the medical profession.

29 C.F.R. § 541.314(a), (b)(1)-(3) (1973).

regulations to support its analysis although the case was based on the 1973 regulations).

The Court, indeed, recognized that § 541.314 was amended in 2004 and expressly referred to the current version of the regulation within its opinion. <u>Cuttic</u>, 760 F. Supp. 2d at 516-17. Moreover, the Court closely examined § 541.300 and § 541.304 and noted the addition of PAs to the listing of jobs that meet the duties requirement for the second prong of the definition of "bona fide . . . professional" as set forth in § 541.300. <u>Cuttic</u>, 760 F. Supp. 2d at 519; <u>see</u> 29 C.F.R. § 541.301(e)(4). The Court also noted that the language found in § 541.314, stating that the exception does not apply to other professions which service the medical profession, can now be found in § 541.600(e).[7]

Defendant also faults the Court for looking at language in the 1973 regulation which states that "[t]he exception applies only to the traditional professions of law, medicine, and

---

[7]     Section 541.600(e) of the 2004 regulations provides, in relevant part:

> In the case of medical occupations, the exception from the salary or fee requirement does not apply to pharmacists, nurses, therapists, technologists, sanitarians, dietitians, social workers, psychologists, psychometrists, or <u>other professions which service the medical profession</u>.

29 C.F.R. § 541.600(e) (emphasis added).

teaching and not to employees in related professions which merely serve these professions."  29 C.F.R. § 541.314.  Defendant states that the Court erred in looking at this regulation and stating that this language "indicates that the DOL intended for the salary-basis exemption, set forth in § 541.304, to only apply to the 'traditional professions of law, medicine, and teaching.'" Cuttic, 760 F. Supp. 2d at 519.

Under the current regulations, similar language stating that the exception does not apply to "employees in related professions which merely serve [the medical profession]" can be found in § 541.600(e).  Although the current regulations do not state that the exception "only applies to the traditional professions of law, medicine, and teaching," the Court did not err in examining this language when interpreting the current regulation because the DOL has indicated, via its Rules and Regulations, that no substantive changes exist between § 541.314 and § 541.304.  Rules and Regulations, 69 Fed. Reg. 22,122, 22,158 (Apr. 23, 2004); Belt, 444 F.3d at 414 (recognizing there are no substantive changes between the 1973 and 2004 regulations); see also Belt v. Emcare Inc., 351 F. Supp. 2d 625, 632-33 (E.D. Tex. 2005) (recognizing that "although the structure of the regulation has changed, the substantive content has not").

2.   The Court's Reliance on Belt was Proper

Defendant also argues that the Court's reliance on Belt is misplaced, and that the ambiguity present in Belt is not present here. In particular, Defendant argues that, unlike the plaintiffs in Belt, this Plaintiff possesses a valid license to practice medicine in Pennsylvania and therefore "unambiguously" falls within the scope of § 541.304's exemption and does not need to meet the salary-basis requirement set forth in § 541.300(a)(1).

Although the 1973 regulations were at issue in Belt, that court was faced with interpreting the same language at issue in this case. In Belt, the plaintiffs included PAs and nurse practitioners ("NPs") who sought overtime pay pursuant to the requirements of the FLSA. 444 F.3d at 406. In Belt, like this case, the court was tasked with determining whether the plaintiffs fit within the FLSA's professional exemption. Id. The relevant regulation the Belt court examined was 29 C.F.R. § 541.3 (1973). That regulation set forth the two-prong test similar to that found in current § 541.300. Additionally, 29 C.F.R. § 541.3(e)(1973) provided an exemption similar to that found in current 29 C.F.R. § 541.304. Section 541.3(e) (1973) provided that the salary basis requirement does not apply to "an employee who is the holder of a valid license or certificate permitting the practice of law or medicine or any of their branches and who is actually engaged in the practice thereof."

Belt, 444 F.3d at 407.  In Belt, the court was faced with
interpreting whether the PAs and NPs at issue held licenses
permitting "the practice of . . . medicine or any of [its]
branches."  Id.  The Belt court stated "[i]f NP's and PA's
practice medicine within the meaning of § 541.3(e), plaintiffs do
not need to satisfy the salary-basis test to qualify for the
exemption . . . .  If, however, plaintiffs do not practice
medicine under § 541.3(e), they are subject to the salary-basis
test, they do not fall within the exemption."  Id.  Thus, in
Belt, the focus was on interpreting the terms "practice medicine"
as used in the regulation.

        Although the regulations have been renumbered, the
regulatory language at issue in Belt is identical to the language
the Court is interpreting in this case.  Specifically, the Court
is faced with determining whether PAs like Plaintiff, although
permitted to practice medicine under the supervision of a
physician, are deemed to be licensed to "practice medicine" as
set forth in § 541.304.  The language found to be ambiguous in
Belt is the same language this Court has found to be ambiguous in
this case; thus, the Court's reliance on Belt is not misplaced.

        Defendant also argues that the Court's reliance on Belt
is improper because neither the PAs nor NPs at issue in Belt were
licensed to practice medicine under state law.  Id. at 412.
Defendant, however, overlooks the fact that the Belt court found

12

the phrase "practice medicine" ambiguous and did not find the licensing requirement dispositive of this phrase's meaning.  If the analysis was as direct as Defendant suggests, then it would follow that the <u>Belt</u> court would have simply ended their inquiry based on the fact that the <u>Belt</u> plaintiffs did not possess an actual license to practice medicine under state law.  The fact that Plaintiff holds a license to practice medicine in Pennsylvania under physician supervision does not change the undefined nature of the terms "practice medicine" as used in the regulation.  <u>See also</u> <u>Parker v. Halpern Ruder</u>, No. 07-401S, 2008 WL 4365429, at *1 (D.R.I. Sept. 16, 2008) (recognizing "practice medicine" is ambiguous and relying on <u>Belt</u> to determine whether a NP falls within § 541.304).[8]

>       3.   <u>The Court Did Not Fail to Follow the</u>
>            <u>Rules of Statutory Construction</u>

---

[8]     In <u>Parker</u>, the Court explained its reliance on <u>Belt</u> as follows:

> This Court finds the analysis in <u>Belt</u> persuasive and rejects Defendants' arguments that the case is distinguishable because it involves an earlier version of the regulation and alludes to Texas law.  The key language in the regulation being considered in <u>Belt</u> is sufficiently close to the language in the current § 541.304(b) to render the case instructive, and the holding is not dependent on Texas law.

<u>Parker</u>, 2008 WL 4365429 at *4.

Defendant also takes issue with the Court's analysis of the 2004 regulations, claiming the Court overlooked portions of § 541.304, and thereby rendered certain language in the regulation superfluous.  In essence, Defendant argues that the term "physicians" was broadened in the 2004 regulations; therefore, the term "other practitioners" must have also been broadened to include PAs.

Section 541.304 states that, in the case of medicine, the exemption applies "to physicians and other practitioners licensed and practicing in the field of medical science."  29 C.F.R. § 541.304(b).  The regulation then states that physicians includes "medical doctors including general practitioners and specialists, osteopathic physicians (doctors of osteopathy), podiatrists, dentists (doctors of dental medicine), and optometrists (doctors of optometry or bachelors of science in optometry)."  Id.  This definition of "physicians" is broader then that found in the 1973 regulations because "physicians" previously only included "medical doctors including general practitioners and specialists, and osteopathic physicians."  29 C.F.R. § 541.314(b)(1) (1973).  Professions that are now deemed "physicians," such as podiatrists, dentists, and optometrists, were previously considered "other practitioners."  Id.  As such, Defendant stresses, "other practitioners" encompasses PA's because "it is hard to imagine who else would be included within

14

the exemption," given the DOL's additions to the term physicians. (Mot. for Recon. at 6.)

The Court, however, focused its analysis on determining whether PAs like Plaintiff are "other practitioners licensed and practicing in the field of medical science." Cuttic, 760 F. Supp. 2d at 518; see id. ("[T]he term 'other practitioners licensed and practicing in the field of medical science' is broad and undefined."). To obtain the meaning of this phrase, the Court relied on the agency's interpretation. See Auer v. Robbins, 519 U.S. 452, 461 (1997) (stating that if a regulation is ambiguous the agency's interpretation is controlling unless plainly erroneous or inconsistent with the regulation). Ultimately, the Court concluded that PAs are not included as "other practitioners." This conclusion, however, does not render the language "other practitioners" superfluous. The fact that PAs do not fall within the meaning of the term "other practitioners" does not mean that there are not others who may fall within this definition. For example, veterinarians are not physicians but could be deemed "other practitioners." See Clark v. United Emergency Animal Clinic, Inc., 390 F.3d 1124, 1125 (9th Cir. 2004) (holding that veterinarians, although not listed, fall within the salary basis exemption, as set forth in the 1973 regulations, as other practitioners).

Thus, the Court finds that Defendant has not met its

15

burden of establishing that this Court's prior ruling is a clear error of the law.  Defendant's motion for reconsideration will therefore be denied.


## III. MOTION FOR INTERLOCUTORY APPEAL

In the alternative, Defendant requests that the Court certify its Order granting Plaintiff's motion for summary judgment and denying Defendant's motion for summary judgment for interlocutory appeal.  See 28 U.S.C. § 1292(b).  Section 1292(b) provides that:

> When a district judge, in making in a civil
> action an order not otherwise appealable
> under this section, shall be of the opinion
> that such order involves a controlling
> question of law as to which there is
> substantial ground for difference of opinion
> and that an immediate appeal from the order
> may materially advance the ultimate
> termination of the litigation, he shall so
> state in writing in such order.

28 U.S.C. § 1292(b).  Thus, "a non-final order may only be certified for interlocutory appeal if the court determines that it: (1) involves a controlling question of law; (2) for which there is substantial ground for difference of opinion; and (3) which may materially advance the ultimate termination of the litigation if appealed immediately."  Hall v. Wyeth, Inc., No. 10-738, 2010 WL 4925258, at *1 (E.D. Pa. Dec. 2, 2010) (quoting Katz v. Carte Blanche Corp., 496 F.2d 747, 754 (3d Cir. 1974)).

16

"[W]hile the district judge must certify that the order satisfies the three criteria, the discretion to grant leave to appeal at the circuit level is not limited by any specific criteria." Katz, 496 F.2d at 754.

Defendant states that the Court should certify its Order for interlocutory appeal because there is limited law as to whether PAs fall within § 541.304's exception to the salary-basis requirement.  Defendant also points to the fact that, in Belt, the district court certified the order it entered in that case to the Fifth Circuit and the Fifth Circuit accepted the appeal.  For the reasons that follow, the Court will deny this request.


A.   The Court's Order Involves a Controlling Issue of Law

The parties do not dispute that the Court's January 2011 Order involves a controlling issue of law.  This case raises the issue of whether Plaintiff, a PA who holds a license to practice medicine under the supervision of a physician, is exempt from the FLSA's overtime requirements based on 29 C.F.R. § 514.304.  The answer to this question is dispositive of the case.  Currently, the only issues remaining in the case are whether Defendant's violation of the FLSA was willful and the damages to which Plaintiff is entitled.


B.   There Are No Substantial Grounds For A Difference Of Opinion

17

Defendant states that there are substantial grounds for
a difference of opinion given that this is "the first Court in
the nation to consider whether a PA like [Plaintiff]" is exempt
from the FLSA's overtime requirements pursuant to 29 C.F.R. §
541.304.  (Mot. for Recon. at 15.)  Defendant states that its
position "is based on substantial factual and legal grounds even
if it differs from that of this Court."  (Id.)  Plaintiff, on the
other hand, states that substantial grounds for difference of
opinion do not exist.  (Pl.'s Resp. at 7-8.) Additionally,
Plaintiff states that the fact that this is a question of first
impression is not, alone, sufficient to warrant certification for
interlocutory appeal.  (Id.)

"Substantial ground for difference of opinion [exists
when the matter involves] one or more difficult and pivotal
questions of law not settled by controlling authority."  Knipe v.
SmithKline Beecham, 583 F. Supp. 2d 553, 599 (E.D. Pa. 2008)
(quoting McGillicuddy v. Clements, 746 F.2d 76, 76 n.1 (1st Cir.
1984)).  In other words, "'[s]ubstantial grounds for difference
of opinion exist where there is genuine doubt or conflicting
precedent as to the correct legal standard.'"  Id. at 599-600
(quoting Bradburn Parent Teacher Store, Inc. v. 3M, No. 02-7676,
2005 WL 1819969, at *4 (E.D. Pa. Aug. 2, 2005)).  "Conflicting
and contradictory opinions can provide substantial grounds for a
difference of opinion."  Id. at 600 (citing White v. Nix, 43 F.3d

374, 378 (8th Cir. 1994)).  "Additionally, the absence of
controlling law on a particular issue can constitute 'substantial
grounds.'"  Id.

Defendant has not pointed to opinions that are
conflicting or contradictory to Belt.  The Court recognizes that
Belt is factually distinguishable from this case and, although
the Belt court discussed the 2004 amendments, the Belt court was
ultimately tasked with interpreting the 1973 regulations.
Despite these differences, however, Belt is helpful in
determining the ultimate dispute in this case because the same
language at issue in this case was at issue in Belt.  Belt
supports the Court's opinion by providing guidance in
interpreting § 541.304.  In fact, other cases faced with
interpreting the language of § 541.304 have relied on Belt.  See
Parker, 2008 WL 4365429 at *1 (recognizing ambiguity in § 541.304
and relying on Belt).

The other basis Defendant cites to establish a
"substantial ground" for a difference of opinion is the fact that
this is a matter of first impression.   However, this fact,
alone, is insufficient to support certification.  See Shaup v.
Frederickson, No. 97-7260, 1998 WL 800321, at *3 (E.D. Pa. Nov.
17, 1998) ("If questions of first impression alone were
sufficient to warrant certification for an immediate appeal, our
Court of Appeals would be besieged with piecemeal interlocutory

19

appeals."). Consequently, the Court finds that Defendant has failed to point to substantial grounds for difference of opinion that warrant certification for interlocutory appeal.

    C.    <u>Interlocutory Appeal Would Not Advance the Ultimate Termination Of This Litigation</u>

        Defendant states that an immediate interlocutory appeal is necessary to advance the ultimate termination of the litigation. Defendant supports this by pointing out that the issues of willfulness and damages must still be determined. Additionally, Defendant points out that Plaintiff has recently filed a putative class action in the Delaware County Court of Common Pleas asserting the same claim as set forth in this case, and that this filing may lead to various other issues for the Court to address. (Mot. for Recon. at 15.)

        "A Section 1292(b) certification materially advances the litigation's ultimate termination where the interlocutory appeal will eliminate the need for trial, complex issues, or issues that make discovery more difficult and more expensive." <u>In re Dwek</u>, No. 10-4259, 2011 WL 487582, at *4 (D.N.J. Feb.4, 2011) (citing <u>L.R. v. Manheim Twp. Sch. Dist.</u>, 540 F. Supp. 2d 603, 613 (E.D. Pa. 2008) (Robreno, J.)). Here, discovery is completed, and the Court has determined the issue of liability. As noted, the only issues before the Court are the wilfulness of Defendant's violation of the FLSA and damages. As to these two

20

issues, the Court is ready, willing, and able to try the case at an early date.  Under these circumstances, the granting of an interlocutory appeal is unnecessary to accelerate the ultimate termination of this litigation.

For these reasons, the Court will deny Defendant's request that the Court certify its Order granting Plaintiff's motion for summary judgment and denying Defendant's motion for summary judgment for interlocutory appeal.

**IV.  CONCLUSION**

Based on the aforementioned, Defendant's motion for reconsideration and request that the Court certify the Order of January 4, 2011 for interlocutory appeal will be denied.  An appropriate order will follow.